## THE DOCTRINE OF RES IPSA LOQUITUR NOT APPLICABLE TO ELECTRICITY.

[Circuit Court of Huron County.]

CHARLES E. MARSH ET AL V. LAKE SHORE ELECTRIC RAILWAY ET AL.*

Decided, December, 1905.

*Electricity and Electrical Wires—Fact of Escape of Electricity not Sufficient in the Absence of Negligence to Charge Electric Companies with Liability for Damages—Fire Started by Fugitive Current—Reasonable Safety Devices—Classification of Electricity—Doctrine of Res Ipsa Loquitur not Applicable—Charge of Court.*

1. The mere fact that electricity, generated by an electric railroad company, escaped from its trolley wire to one of its span wires; thence to a telephone cable of a telephone company; thence to a telephone cable of another telephone company; thence to a gas pipe in a store building; thence to the lead connection with a gas meter in the basement, which was melted off, igniting the gas, setting fire to the floor above and damaging a stock of goods, does not render all or any of said companies liable in damages to the owner of the goods, in the absence of proof of negligence on the part of one or more of said companies.

2. Electricity is of a highly dangerous character, but of such common and recognized use in modern civilization that its use and keeping are sanctioned by law, and if injurious consequences flow from its use and keeping, negligence of the user or keeper must be shown to render him liable to one injured by an electric current.

3. In the absence of a contractual relation between the parties, or of a statute regulating the matter, the doctrine of *res ipsa loquitur* applies only to the case of such highly dangerous things or agencies as are kept or used solely because of their highly dangerous character, and not to electricity which is classed with steam rather than dynamite.

WINCH, J. (sitting in place of Wildman, J.); HAYNES, J., and PARKER, J., concur.

Error to Huron Common Pleas Court.

*Affirming 3 O. L. R., 635.

406    CIRCUIT COURT REPORTS—NEW SERIES.

Marsh et al v. Lake Shore Elec. Ry. et al. [Vol. VII, N. S.

This was an action for damages brought by plaintiffs to recover for loss of a stock of goods in a store building in Norwalk by reason of fire alleged to have been caused by the negligence of the defendants. Some of the defendants were dismissed from the case by the trial judge and as to this we understand there is no complaint.

The case was submitted to the jury as to the negligence of the defendants, Albert E. Lang, receiver, operating the Lake Shore Electric Railway, the Central Union Telephone Company and the Local Telephone Company. Plaintiffs claim that the fire originated by reason of the following sequence of events:

On August 2, 1902, the Central Union Telephone Company was stringing a messenger wire on the south side of east Main street, east of where the fire occurred, using a tackle and horse to stretch the wire. A rope in the tackle attached to the messenger wire broke and permitted the said wire to sag down onto a span wire of the Lake Shore Electric Company which was heavily charged with electricity from its trolley wire. The electric current passed easterly on this messenger wire until it came to a guy wire crossing the street to the north, which it followed to the north side of the street where it met certain lead hangers supporting the cable covered with a lead sheath belonging to the Local Telephone Company; it traveled on this lead sheath to the west and followed it southerly back across the street and into the exchange of the Local Company on the top floor of the building, the ground floor and basement of which was occupied by the plaintiffs. This cable on the top floor of the building crossed a gas pipe with which it was in contact, or so near that the electric current passed by arcing or otherwise into the gas pipe and down it to the basement where it came to the lead pipe connecting the gas pipe to the gas meter, which lead connection it melted off, allowing the gas to escape and igniting it. The ignited gas set fire to the floor above it and from this fire the damage arose, as it is claimed.

The plaintiffs alleged that the Lake Shore Electric Company, which name may be used as meaning its receiver, was negligent and failed to use ordinary care in not placing and maintaining an insulating device in the span wire between its trolley wire

and the pole to which said span wire was attached, and in not placing a guard wire over said span wire.

They alleged that the Central Union Company was negligent in allowing its messenger wire to come in contact with said span wire and at the same time with the guy wire crossing the street.

They alleged that the Local Company was negligent in placing its lead-sheathed cable so near to the iron gas pipe connected with the meter in plaintiffs' basement that any heavy current of electricity would arc from said cable to said gas pipe, without providing some adequate insulating device to prevent such arcing.

The answers of the defendants severally deny negligence on the part of the defendants and that the fire occurred in the manner claimed by plaintiffs. One or more of the defendants deny that the fire occurred at all, and allege that if it did, it was by reason of the plaintiffs' own negligence.

Plaintiffs' reply denies contributory negligence.

The issues of fact thus raised were submitted to the jury, which found for the defendants, and judgment was entered accordingly.

Plaintiffs have brought the case here and urge that the judgment be reversed and the cause remanded for a new trial for error in rulings on evidence and in the charge of the court. As to the many exceptions to rulings on evidence, which have been called to our attention, all we can say is, that we have examined and considered them, but find no error prejudicial to plaintiffs which would require a reversal of this case. The bill of exceptions is so long, the rulings complained of so numerous and the character of the evidence, much of it expert testimony as to the nature and characteristics of electricity, so technical and abstruse, that no good purpose would be subserved by reviewing in detail the rulings complained of.

As to the charge, exceptions were taken by the plaintiffs to the charge as given by the court, to the giving of certain requests to charge of defendants and the refusal to give certain requests to charge of plaintiffs.

The sum and substance of the objections to the charge is, that it held the plaintiffs to the burden of proving the negli-

408    CIRCUIT COURT REPORTS—NEW SERIES.

Marsh et al v. Lake Shore Elec. Ry. et al. [Vol. VII, N. S.

gence of one or more of the defendants as charged in the petition, while plaintiffs now claim that the doctrine of *res ipsa loquitur* should have been charged; in other words, that, having proved the fact of the injury and the defendants' connection with it, as claimed, it was for the defendants to prove, if they could, that they were without fault. The charge as given, is published in *Marsh* v. *Railway*, 3 O. L. R. 635, and for that reason it is not now necessary to restate its propositions. What counsel for plaintiffs in error claim as the correct rule for the case is best stated in their own words, as follows:

"When we began this action we believed that the doctrine laid down by Judge Blackburn in the case of *Fletcher* v. *Rylands,* 5 H. L. Rep., 330, was the correct rule of damages in this case at bar, but did not feel so sure as we do now, and plead negligence, and upon a hearing upon motions and demurrers, we took leave to amend and again plead negligence. We are now firmly of the opinion that a statement of the facts, showing that an electrical force was created or gathered, and conducted upon our premises, setting fire to them and causing damages by smoke, states a good cause of action without pleading negligence. The language used by Judge Blackburn exactly fits this case, in that we were in and upon our own premises, and the three defendant corporations, in the prosecution of their several businesses for profit, created or gathered together a dangerous and destructive force, from which, if it escaped, injury was liable to follow, and well knowing this, not only permitted it to escape, but constructed a path or channel that was bound, under the laws of nature, to bring it in and upon our premises, by reason of which our goods were smoked and damaged, without any fault of ours."

There occur to us at least three reasons why the rule contended for should not have been applied in this case: First, because it is not certain from the evidence that the fire was started in the manner claimed by defendants; second, at least one of the defendants, the local company, was not active in the transaction at all; third, the "celebrated and much criticised case of *Fletcher* v. *Rylands,*" has never been adopted in its entirety as the law of this state.

On page 146 of the opinion in the case of *Langabaugh* v. *Anderson,* 68 Ohio St., 131, Judge Price says:

"As yet no decision of this court has adopted the entire scope of *Fletcher* v. *Rylands,* and while it holds in general a good and wholesome doctrine, resting on good morals and sound reason, its application should be made with suitable and necessary limitations."

But let us take up plaintiffs' claim with regard to the Lake Shore Company, alone, as that company appears to come more nearly within the scope of plaintiffs' contention. Here was a company handling and using for its own purposes a subtle and highly dangerous energy, harmless, if properly handled, · but of such tension and so dangerous if allowed to escape that injury was sure to happen to persons or property coming in contact with it. The great danger to be apprehended from electricity of high voltage or tension is known to us all, for is it not selected by the state as the instrument for the speedy execution of those condemned to death?

With regard to the rule that the "occurrence speaks for itself," many cases have been cited to us. Most of the cases are gathered together and analyzed by Judge Price in the case of *Langabaugh* v. *Anderson, supra,* and from his analysis we gather that there are three classes of cases in which the rule is applied:

First, those cases in which a duty is imposed upon the defendant by reason of a contractual relation between the parties.

To this class belongs the sleeping-car case, where the upper berth fell· upon the passenger in the car (*Railway* v. *Walrath,* 38 Ohio St., 461). The railroad company, in effect, was held to be the insurer of the safety of the passenger.

The same rule was applied by the Summit County Circuit Court in the case of *Wheeler* v. *Traction Co.,* 6 C. C.—N. S., 406. Wheeler had contracted with the defendant company to supply him with a current of 104 volts of electricity for incandescent lights. Such current is harmless. The company permitted 1040 volts to pass in over its wire. Wheeler was killed. The company was held to an explanation of the injury and liable, unless it showed that some one else sent in the deadly current. The case here does not come in this class, for no contractual relation existed between the parties.

410    CIRCUIT COURT REPORTS—NEW SERIES.

Marsh et al v. Lake Shore Elec. Ry. et al.  [Vol. VII, N. S.

The second class of cases includes those where a statutory duty has been violated, such as in the case of *Gas Fuel Co.* v. *Andrews,* 50 Ohio St., 695, where it was held:

"The provision of Revised Statutes, 3561$a$, impose on plaintiff in error the duty of keeping under its control natural gas while it is transporting the same, and if damage should result to others, without their fault, by its explosion while being thus transported, the plaintiff in error would be held liable therefor, although not negligent in regard thereto."

It is not pleaded in this case that any duty is imposed upon defendants by statute, which they violated.

A third class of cases is that where the defendant is keeping or using a highly dangerous thing or agency, which is liable to do harm to others if it escapes or is negligently used or handled. To this class belongs the case at bar, but we find here a distinction pointed out which requires a further classification or subdivision into those which are at all times, in all places and under all circumstances dangerous: such as are made, bought, sold and used because of their highly dangerous character, as to which the owner assumes the liability of their accomplishing natural and probable results; and the other subdivision, those things of a highly dangerous character, but yet of such common and recognized use in modern civilization that their use or keeping is sanctioned by law and necessary in many departments of industry, as to which the courts hold that their use being lawful, if injurious consequences flow therefrom, negligence in their use must be shown, to render the defendant liable.

Now, to which of these classes belongs electricity of tension sufficient to run a trolley car and which will kill a man if not properly handled?

In applying the distinction here drawn to the case at bar, the court confesses its ignorance of natural science. Much help is to be had by reference to the decisions of the Supreme Court of this state, but principally by way of illustration. The law is growing from day to day, as industrial science is growing, so that what may now be considered in the first subdivision of this class, ten years from now, by reason of the advance of the arts, may belong to the second subdivision.

In the first subdivision belong the gunpowder and nitroglycerine cases, such as the case of *Bradford Glycerine Co.* v. *Manufacturing Co.* 60 Ohio St., 560, where it was held that the owner of the explosive was liable for damages caused by its explosion, without proving that he was negligent.

Of the same character, is the vicious dog case of *Hayes* v. *Smith*, 62 Ohio St., 161.

On the other hand, it has been held that negligence must be proved in the case of sparks from a locomotive (*Ruffner* v. *Railway*, 34 Ohio St., 96); explosion of a steam boiler (*Huff* v. *Austin*, 46 Ohio St., 386), and storage of crude petroleum in tanks (*Langabaugh* v. *Anderson*, 68 Ohio St., 131).

In the steam boiler case it was said:

"The defendants had a right to place the steam boiler on their premises. Used as it was to run the sawmill, it was in no sense a nuisance. As an agent in the various departments of industry, the steam engine has become a necessity in modern life. But though placed on one's own premises, the owner of a steam engine and boiler will be held responsible for his negligence, if he so operates the same as to injure one who comes lawfully upon the premises by invitation or permission. Though doing a lawful act upon his own premises, he will be liable for injurious consequences that may result from it to another, if it was so done as to constitute actionable negligence. In such case there is a proper application of the rule that one should enjoy his own property in such manner as not to injure that of another."

We are aware that in some states electricity has apparently been classed with dynamite rather than with steam. The strongest expressions of opinion on the subject are found in the Louisiana case of *Potts* v. *Railway*, 110 La., 1 (34 So. Rep., 103), but they were not necessary to a determination of the case, for the telephone lineman knew that the span wire of the trolley company was charged with electricity, and the only issue involved was as to the lineman's contributory negligence.

The modern uses of the subtle and highly dangerous energy, called electricity, in the industrial and commercial world are perhaps more numerous, and at least more common or widespread, than the uses of steam. Counsel for plaintiff suggest

that electricity operates under known rules. It lights our streets and houses; it warms our cars; it runs our motive power, or is our motive power in the operation of manufacturing establishments; it is used in chemistry and the arts in manifold ways, sometimes to reduce the most infusible substances by its great heat, coupled with its peculiar energy. It propels our cars with the speed of a locomotive and carries a whisper for a thousand miles. Its energy varies and is controlled, from that which rings your door bell to that which executes your criminals.

It is harmless, indeed healthful, when but slightly present; it is deadly when of high degree or tension. Varying through all these degrees from harmless to deadly, it encircles the earth upon a mesh of wires and we can not now get along without it. How many years backward would civilization step, if we abolished electricity from the daily affairs of life. Its use is recognized and lawful. Its dangerous qualities are fully known by all—as fully as, if not better than, the expansive power of steam. Shall those who store it, or use it, be held to be insurers of the safety of all persons who may come in contact with it in person or property, or shall they be held to care, commensurate with its deadly qualities, as they are in the case of steam?

For the reasons stated, we are inclined to think the charge in this case was warranted by the case of *Langabaugh* v. *Anderson, supra.*

Again, we are not at all sure that the jury was not right in bringing in a verdict for the defendants, because the plaintiffs failed to prove, by a preponderance of the evidence, that the fire originated in the manner claimed by them. On this point, however, we are doubtful whether we would consider the verdict against the weight of the evidence, had the jury found the other way.

On the whole, we find no error in the record, and the judgment is affirmed.

*McKnight & Thomas*, for plaintiffs.

*S. M. Young* and *A. V. Andrews*, for Albion E. Lang, receiver of Lake Shore Electric Railway.

*C. P. & L. W. Wickham*, for Central Union Telephone Co.

*A. M. Beattie* and *Jesse Vickery*, for Local Telephone Company.